BARNES COMPTON, *vs.* WILSON COMPTON.—*December,* 1844.

It is the duty of the *Orphans court* in appointing a guardian, to consult the interest, rather than the wishes of an infant.

An appeal will not lie from an order of the *Orphans court,* appointing a guardian.

APPEAL from the *Orphans Court* of *Charles* County.

On the 5th March 1844, the appellant, a minor, appeared in the *Orphans* court and prayed to have a guardian appointed, and asked to have *Richard Barnes, esq,* one of the justices of the said court, to be appointed, who retired from the bench. The court postponed the appointment until the 3rd Tuesday in March, when, on the 19th of that month, the appellee filed a petition, alleging the condition of the appellant's property, the necessity of a guardian, and institution of legal proceedings to protect the minor's property and vindicate his rights. The petitioner alleged, that he was the nearest male relation of the minor, and ought to be appointed. The appellant answered

this petition, and reiterated his wish to have his relation, *Richard Barnes*, appointed. On the 23rd March, the court decreed that *Wilson Compton* be appointed guardian, on giving bond; from which decree *Barnes Compton* prayed an appeal, by his next friend, *Richard Barnes*, to this court.

The cause was submitted on notes of counsel, to ARCHER, C. J., DORSEY, CHAMBERS, SPENCE and MAGRUDER, J.

By T. F. BOWIE for the appellant:

The appellant contends that he has the *right to select* his own guardian, and that his selection is to be admitted by the *Orphans* court, unless good cause be shewn that he has made an improper or injudicious selection. In this case, it is not pretended that *Richard Barnes* is not, in all respects, a fit and proper person to be guardian to the minor. No objection, whatever, was urged against his appointment, on the ground of unfitness, on the contrary, if the statements made in the minor's petition to the *Orphans* court are to be taken as true, and they are not at all controverted, he was, and is, of all persons, the most fitting.

The appellee insists, in his petition, that being the nearest male relation to the minor, he is to *be preferred* as his guardian, and the court below, in granting his petition in the manner they do, adopt his views of the law, and in effect decide, that he is to be preferred, and by reason of such preference, *entitled* to the guardianship. These views of the law are deemed to be altogether erroneous, and an examination of the authorities, both in *England* and in this country, will prove them to be so.

It has been supposed, that the time at which a minor has the right to choose his guardian is, at the age of *fourteen*, and not sooner; but this will be found to be the case only with reference to those kinds of guardianships in *England*, where, by the law of *England*, the right of guardianship belongs, as *a matter of right*, to certain descriptions of persons, until that age is attained by the minor; as in the cases of guardianship

in *chivalry ;* in *socage ;* by the custom of *gavel kind ;* by the custom of the *manor,* and the like. In all these cases, the right of selection does not exist *before fourteen,* simply because, by law, the right of guardianship devolves by operation of law, as a matter of right, and to allow the minor the right of choice in such cases before *fourteen,* would conflict with the rights of other persons secured to them by law, and the immemorial usages of the realm. In the case of the guardianship in socage, which exists in all cases where minors have lands held by the socage tenure, the next male heir who cannot by possibility inherit the estate, is entitled to the guardianship until the minor attains the age of *fourteen,* at which time the guardianship ceases, and the right of selection begins. In such a case the guardian derives his right, not from appointment by any of the courts of *England,* but by the usages of the common law, and is entitled to enter into and take possession of the minor's lands and estate, and to keep the same until he attains to the age of fourteen. So also, with reference to the guardianship in chivalry, which exists only where minors are entitled to lands held by "*military* or *knight service.*" In this case, the lord who originally granted the lands and of whom they are so held, is entitled to the guardianship of the minor, and to possession of all such land, until the minor attains to an age at which he is able to perform "military services." In this case also, the right of choice in the minor before that age, does not exist, because it would conflict with the feudal rights of the lord, which are secured to him by the immemorial customs of the common law; and so in reference to all the other descriptions of guardianships before spoken of. Wherever the estates of the minor are holden by any of the feudal *tenures* or *customs* of the realm, the right of selection in the minor does not exist before the age of fourteen years ; but it is confidently believed, that *in all other* cases, where the minor's estates are not held by any of the ancient *feudal tenures,* the right of selecting his own guardian exists at any age, that he is capable of making a *prudent selection.* See *Coke on Littleton,* 786. 14 *Law Library,* 69. *Coke on Littleton, by Thomas,* 183, *note* 6. 1 *Chitty Blac. Com.* 462, *note* 9.

In the ecclesiastical courts of *England,* a minor above *seven years of age* has the right to choose his guardian, and he is admitted in that character by the court, who hold themselves bound by the minor's nomination, unless an improper choice is made, and in that case, and that case only, they will control it. 40 *Law Library,* 68, 69. *McPherson on Infants,* 74, 75. This is the undoubted law of England.

The feudal tenures were abolished in this country by the Revolution, and there are now in this State no such tenures as draw with them any of the kinds of guardianships above spoken of, which devolve, by operation of law, on those who are entitled. But all guardianships in this State are created by appointment, and such as are in *England,* now granted by the ecclesiastical and chancery courts, in which the right of selection has uniformly been acknowledged to exist in the minor, if above seven, and capable of making a proper choice.

This was undoubtedly the case in this State, and the right of selection seems to have been engrafted upon our laws by the legislature of the State. By the act of 1715, chap. 39, sec. 7, *Bacon's Laws of Md.,* the right of choice is given to the minor in express words, "if capable of choosing his guardian," and is denied to him only in the event of his not being of sufficient age to make a proper choice. No particular age is mentioned by the act alluded to. The minor's capacity to make a prudent and judicious choice, seems only to have been considered as sufficient to give him the right. And it is submitted, that this important right is no where impaired or taken away by any subsequent legislation of the State. It is clearly not taken away by any *express words* of repeal in any subsequent act of Assembly. The act of 1798, chap. 101, which it is supposed, repeals the act of 1715, by sec. 2, repeals only so much of all former acts "as are inconsistent with, or repugnant to any of its provision." So far from repealing this part of the act of 1715, the act of 1798 seems to recognise the right of choice in the minor. For by sub. chap. 12, sec. 2, the *Orphans* courts are authorised "to call or have brought before them, any orphan for the purpose of appointing a guardian."

Why have them brought into court to have a guardian appointed, if they are not to be consulted in reference to the appointment? This provision seems to imply the right of choice, and the uniform and invariable practice in all the *Orphans* courts through the State has been, from their organization to the present day, to allow the right of choice precisely in the same manner, as was allowed by the judge or commissary general for probate of wills, &c., under the act of 1715, sec. 7. They have never construed the act of 1798 as repealing the act of 1715, in this particular; and in the case of *Kraft, vs. Wickey,* argued in this court as late as 1832, 4 *Gill & John.* 339, the counsel in the cause seem to have recognised the act of 1715, sec. 7, as still in force in this State, so far as relates to this right of selection of guardians by minors. So important a privilege as this is, to the *infant* citizens of this republic, ought not to be taken away from them by mere construction or implication. There ought to be express words of repeal, before the courts should permit so serious an invasion of the rights of infants. It is comfidently submitted, that no such express words of repeal can be found in any subsequent statute of the State, and it is difficult to discover any principle of law which would require the courts, ever watchful as they are over the rights and interests of minors, to deny to them this inestimable privilege.

The right to choose guardians *before the age of fourteen,* and whenever they are capable of making prudent selections, being thus established to be in all orphans, how far the *Orphans* courts are bound by their selection, when made? will be the next subject of inquiry. To say that the *Orphans courts* have an unlimited discretion in the matter, will be in effect to deny the right of selection in the minor, for of what avail or benefit will it be, if the *Orphans courts* in the exercise of a wild and arbitrary discretion, have the right to over-rule their choice whenever they may think proper. The act of 1798 sub. chap. 12, sec. 1, gives to the *Orphans courts* the power to appoint guardians to all orphans in this State, entitled to any real or personal estate, but this act does not prescribe the rules which

are to govern the *Orphans courts* in the exercise of that power. They are simply substituted by the act of 1798, in the place of the commissary general, who originally had that power, under the act of 1715, leaving the principles and rules of law by which they are to be governed in the exercise of the power, precisely where they were prior to the passage of the act of 1798. And what were those principles? The authorities already cited shew what they were, and the extent to which the right of selection has been recognised in the minor. It is only where the minor makes an improvident choice, or selects some person manifestly unsuited and unfit for the station, that the *Orphans courts* can control it.

This restricted discretion is allowed to the *Orphans courts,* from regard to the interests of minors, and with a view to protect them in the enjoyment of the right itself. They are bound by the selection, if it does not appear to be imprudent; and those who seek to set aside the selection made, must prove or shew it to be imprudent, or in some way injurious to the minor. The same rule on this subject will prevail here, that prevails in the ecclesiastical courts of *England.* "The minor may himself nominate his guardian, who is then admitted in that character by the judge, but if the minor makes an improper choice, the court will control it." 41 *Law Library,* 69. *McPherson on Infants,* 75. If without any proof of unfitness in the person selected, or any pretext that he has been injudiciously selected, the *Orphans* court disregards the right of choice in the minor, it would be manifest error and the exercise of an arbitrary and unreasonable discretion, which the law never designed to confide to it.

In the case at bar, no pretext of that sort is alleged, nor does it appear that any objection of that character was made to the person who was selected by the minor as his guardian. It is exceedingly difficult, therefore, to ascertain any excusable ground for the action of the *Orphans* court in this case, and still more difficult to apply any principles either of law or equity, which would justify the order passed by them, by which they have so unceremoniously impaired the infant's right of choosing his own guardian.

By the act of 1820, commonly known as the act to direct descents, the right of election to take the lands of an intestate, at their valuation, is secured to the eldest heir. This right of election is declared to be a valuable *privilege* by this court in the case of *Chaney, vs. Tipton,* 11 *Gill & John.* 253; and if invaded or withheld by any action of an inferior court, would be such a wrong as may be redressed by the appellate court.

Can it be doubted, that the right of an infant to select his own guardian, is of equal value and concern to him as the right of election, under the act of 1820, is to the persons to whom it is given? and if in the one case, an invasion of the right would be redressed on appeal, it is difficult to see on what grounds similar redress would be. denied in the other. Whenever a matter is *purely within the discretion of the Orphans courts,* as in the case of the granting of letters of administration in certain cases, it is admitted, that no appeal will lie to reverse their action; but this is, simply, because in such cases no rights are impaired, or wrongs inflicted. The *Orphans courts* having the unlimited discretion in such cases, are not responsible for the exercise of it, and the courts will not intend, that they have done wrong to any one who has *a right* to complain.

But the question now under review is very different from that in the case supposed. The right of a minor to select his guardian, is a positive right secured to him by law, and not a mere matter of appointment, within the discretion of the *Orphans courts.* If they have discretion at all, it is restricted in its nature, and dependent entirely on the existence of peculiar circumstances, which must be shewn to exist in fact, before the discretion, as a rule of action, arises at all. If the circumstances do not exist, on which depend the right of discretion, then no discretion exists at all; and if in such a case, a court acts upon such discretion, thus assumed by them, where it was not intended to be given, their action would be erroneous, and a clear case of usurpation of power. In all such cases it is well settled, that an appeal will lie to reverse such erroneous exercises of judicial power.

THOS. S. ALEXANDER, and P. W. CRAIN, for appellee.

The question presented by this record is, whether an infant of *thirteen* years of age, has a right to appoint his own guardian? Or whether such appointment rests in the discretion of the *Orphans* court? If the infant of such age may claim the right of selection, then the decree in this case must be reversed. If, on the other side, the *Orphans* court possesses the power of appointment simply, or may control the exercise of the right of selection, by an infant, (assuming such right to exist,) in either case the decree must be affirmed.

By the act of 1798, ch. 101, sub. ch. 12, sec. 1, (which it is apprehended gives the law to the case,) it is enacted, that whenever land shall descend, or be devised to a male, under the age of twenty-one years, &c., &c., and said male, &c., shall not have a natural guardian, or guardian appointed by last will, &c., &c., the Orphans court, &c., shall have power to appoint a guardian to such infant, until the age of twenty-one years, if a male, &c., &c.

The power of appointment is thus given over all male infants, who at the time of its exercise, may be under the age of twenty-one years, *simply, absolutely ;* without *restraint,* or *qualification,* or *exception.* The power is given to the court, to be exercised as its judicial discretion may dictate; and for the due exercise of such discretion, it is responsible. It may not devolve its power on another, nor permit its discretion to be controlled by the caprice of the infant. Confining our attention to the law itself, it is very clear, that no distinction is made between infants above, and those under the age of thirteen years ; and if the power of the court may be controlled by the nomination or selection, made by an infant of twenty years, then there is no legal reason, wherefore, the same control should not be exercised by an infant of twenty months.

It is true, that by sec. 2, "the court shall have power to call, or have brought before them, any orphan as aforesaid, for the purpose of appointing a guardian." This power is *potential* merely, and we know, that in practice, many guardians are appointed in the absence of their wards. In some cases, the

court calls the infant before it, in order that the infant may be handed over to the custody of the guardian. In other cases, it is exercised with a view of consulting the infant's reasonable inclinations. But whatever may be the considerations upon which the enactment rests, and whether the authority is deemed *potential* or *imperative*, it is very clear, that it extends equally to infants of all ages. And if under pretexts of his right, to appear before the court, at the time a guardian is to be appointed for him, an infant of fourteen years, or thirteen years, may claim the privilege of naming the person who shall be appointed, then may the like privilege be claimed and exercised by an infant of any age whatever.

On the part of the appellant, it is attempted to control the preceding enactment, by interpolating therein the rights, which it is supposed an infant might have exercised by the common law. It is admitted, that at common law, an infant owning lands in socage tenure, might have selected his own guardian, after the expiration of his guardianship by tenure. But this admission does not assist the appellant, since the guardianship in socage, continued until the infant attained his full age of fourteen years. The ecclesiastical courts are likewise in the habit of appointing guardians, under certain circumstances; but, their power to appoint a guardian, except for any committed purposes, is denied, and it would seem, that in those courts, the power of selecting his own guardian, is given to any infant, who is above the age of *seven* years. If we are to derive authority to our *Orphans courts*, from the practice of the ecclesiastical courts, we must take that practice as we find it. But this is not contended for, and it is by no means certain, that the literal admission of the right of an infant, to select his own guardian, is not accompanied by the practical exercise of the power, to guide that selection, as the court itself deems expedient. Just as a chapter, in the election of a bishop, find their responsibilities alleviated by the intimation, which accompanies the *conge delire;* that the crown will be gratified by their choice, of a particular individual. In my opinion, safer precedents may be derived, from the provisions of the statute

32　v.2

of 12 *Car.* 2, ch. 24; and the practice of the Court of Chancery, which to supply the defects of the common law, has been compelled to exercise the power, of appointing guardians to the persons and estates of infants. The father and the court exercise their powers, irrespective of the inclinations of the infant, and in every case, the appointment continues until the ward attains his age of twenty-one years. For all this, I refer to *McPherson on Infants*, (41 *Law Library*,) the authority referred to by the counsel, for the appellant.

He next refers to the act of 1715, ch. 39, sec. 7, which gives the power of selection to an infant, who is capable of choosing his guardian, and hence argues, that there is an age, after which the discretion of the court ceases. The act also says, that *if the infant be not at age*, the court shall appoint. It is clear then, that the rule intended to be established, was not a rule which was to depend on the actual discretion of the infant; but discretion was to be imputed or denied, as a legal conclusion from his age. And the right is more definite, and better secured, if it is made to depend on age, than it could be, if made to rest on actual discretion. Who is to judge of the infant's actual discretion? The court, and the coincidence, or otherwise, of the infant's selection with the court's preference, would be the conclusive evidence of the capacity of the infant. What then was the age, which determined the court's discretion? The act of 1763, ch. 24, sec. 2, which, extending the court's power to some cases, not covered by the act of 1715, empowers the court to permit the infant, if above the age of fourteen years, to choose his guardian, and if *under the age of fourteen years*, then the court is to appoint. Now, treating these acts as parts of one system, the age of fourteen years, is *the age* referred to generally, by the act of 1715, and the infant's capacity is determined by his age. I care not then, whether these acts shall form a part of our statutory law, or are repealed as inconsistent with the provisions of the act of 1798. I incline to think, their enactments are entirely inconsistent with the broad and unlimited discretion, which is given to the *Orphans courts*, by the act of 1798;

and infer from the diversity in those provisions, an intent on the part of the legislature, to withdraw from the infant the anomalous power of appointing the guardian, who is to check and control him at the very age, when experiences teaches us, a youth is the least controllable. If we can notice the origin of the act of 1798, we may fairly infer, from the character of its author, an intent to substitute a power, concurrent and co-extensive with that of the Court of Chancery, to appoint as guardian the person whom the court may deem best fitted, to exercise all the functions pertaining to the office of guardian. In crediting this concurrence of jurisdiction, the most mischievous consequences would result, if it was understood, that if taken before the court of chancery, the infant would have to acquiesce in the appointment, to be made by the court; whilst he was at liberty, by going before the *Orphans* court, of selecting a guardian for himself. I refer to the *North Carolina Reports, Hayw.* 350, 303, *Mills vs. McAllister*; and especially to the note at the end of the case, for the purpose of showing, that the court may and should exercise, without restraint, its power of appointment.

If the court possessed the power of appointment, then its action in this case is conclusive. A variety of cases are to be found, in which it has been adjudged, that the appellate court will not attempt to control the court of the first instance, in the exercise of powers confided to its discretion, and surely no subject can be suggested, in regard to which, it is more important, that the court having personal intercourse with the infant, and the competitors for the care of his person and property, should be the ultimate judges of their relative merits.

Admit this court to have a control over the discretion of the *Orphans* court, to set aside its judgment, when such judgment is shown to have been predicated upon improper or clearly insufficient grounds, is there any thing on the face of this record to show, that the court's discretion was not rightly exercised? The facts on which the court acted; the grounds of their decision, are not stated. The infant's petition alone is relied on, as evidence of the qualifications of the person nomi-

nated by him. But, the averments in that petition, are not in themselves evidence, nor are they sustained by proof. Were it otherwise, the statements made by the infant may well stand with other facts, which, if disclosed, would show the entire unfitness of his nominee; neither the influence which he has acquired over the infant, nor his literary attainments, lead to the conclusion, that his moral qualities are such as we should require in the guardian of a youth ; and it is by no means improbable, that the proceedings, which are contemplated by the appellee, were designed for the assertion of some right of property of the infant, against the person, whose influence over the infant, has occasioned this controversy. I am not at liberty to state the particulars which have been communicated to me; but I am instructed, and may so say in general, that the court below, acted on grounds very satisfactory to itself; and to request, in justice to that court, nay, more especially for the welfare of the infant, that the decree may not be reversed, and the guardianship of the infant changed, without affording us an opportunity of showing the grounds on which the appellee was preferred. In the present state of the record, every presumption is to be made in favor of the decree. There is nothing on the face of the record, to convict them of improper, immature judgment. If the power of the court over the subject, is conceded, then must it be assumed, that it has rightly acted, 3 *G. & Johns.* 39, *Owens vs. Collinson;* and I apprehend this consequence will follow, whether it is supposed the court possessed the power of appointment simply, or possessed a power of controlling an injudicious choice, on the part of the infant. If the right of the infant to select, is subject to any control, then ought we to assume, it was properly controlled in this instance, 1 *Coxe,* 397, *Eldridge vs. Lippincott,* here conceded, that the mother was *prima facie* entitled to the guardianship. Yet, the court having appointed another, without assigning reasons therefor, the Court of Appeals presumed there were adequate reasons for setting her aside. Admit with us, that the right of the infant, when improperly exercised, may be controlled, and we may very confidently rely on the above

case as an authority, in point, in our favor. Will its application be avoided by asserting, that our youth, when by the exuberance of their passions they are most likely to be led astray, shall have the absolute and uncontrolled power of selecting their guardians and advisers? I know that the power existed, without any legal control, at the common law. The same may be predicated of our acts of 1715 and 1763; and hence, I conclude very confidently, that our legislature of 1798, designed to abrogate a rule which cannot be observed, without entailing upon our sons and daughters the most evil consequences.

Nothing, be it observed, is said against the fitness of the appellee. He is the nearest of kin to the infant, the surviving administrator of the estate of the infant's father. If his personal qualifications are admitted, there is propriety in selecting, as guardian, the person who is already possessed of the infant's estate. The infant's subsistence is most surely provided for; and all rights of the infant against him, as guardian and administrator, are saved, until the infant attains his majority. These are important considerations.

MAGRUDER, J., delivered the opinion of this court.

This appeal must be dismissed: from an order of the *Orphans* court, appointing a guardian to an infant, no appeal will lie.

It is the duty of the *Orphans* court, in appointing his guardian, to consult the interests, rather than the wishes of the infant. If the latter was competent, without control, to choose his guardian, it would be scarcely necessary for him to have one. He might also choose his own boarding-house, his instructers, and others whose services he needed. The *Orphans* court, in the discharge of this duty, may make an injudicious choice; but it is not probable that this court, without any information to assist them, could exercise such a power more judiciously.

From such an order, it would not be more proper for this court to entertain an appeal, than from an order of the county court, granting, or refusing to grant, a new trial.

APPEAL DISMISSED.