# MISSOURI JOHNSON *vs.* JANE BRANNAMAN.

An appeal will not lie from a decision of the orphans court, refusing to take a bond, tendered under the *second* section of the act of 1793, ch. 45, to prevent the binding out of an infant; the *character* of the party offering the bond, whether he be a suitable and proper person to perform the duties imposed by its condition, are matters left to the judgment and *sound discretion* of the *orphans court.*

The laws in relation to the care and custody of infants, were passed for *their* benefit, and not to promote the views of those who may seek to obtain possession of their persons.

The words of the act of 1793, ch. 45, that the orphans court shall not bind out the child, "if any relation or *other person*" shall give bond, "for the *due* and comfortable maintenance," and "for the *reasonable* schooling and *education* of the child," mean any person *suitable for the performance of the duties,* imposed by the condition of the bond.

In this case, the orphans court properly refused to receive the bond offered by the *keeper of a house of ill-fame,* in order that she might retain possession of a female child, against the application for her apprenticeship made by a relative of the child competent in character and means to maintain and educate her.

APPEAL from the Orphans Court of Baltimore city.

The appellee, applied to the orphans court to have an infant, Mary Ann Brannaman, about three years old, her great-grandchild, bound to her as an apprentice. The mother testified that the child was illegitimate, and that when about six months old, she gave her to the appellant, in whose possession she now is, and who, at that time, kept and now keeps a house of ill-fame; and that she is willing the child should be bound to the appellee. It was also proved that the appellee is a woman of excellent character, and has means of taking care of the child, and giving her proper maintenance and schooling.

The court having decided to bind out the child, the appellant, to prevent this binding, and to enable her to retain possession of the child, tendered to the court a bond with surety in the penalty of $266.66⅔, conditioned to provide for the due and comfortable maintenance, and sufficient and proper clothing, of the child, until she attains eighteen years of age. The court refused to receive this bond, and passed an order binding out the child to the appellee, and from this order the present appeal was taken by the appellant.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*R. C. Barry* for the appellant.

The only power which the orphans court has to bind out an

orphan, is conferred by the act of 1793, ch. 45, and the second section of this act provides; "that when any child shall be before the court for the purpose of being bound out as an apprentice, if any relation *or other person* will with good and sufficient security, enter into bond in the penalty of one hundred pounds, for the due and comfortable maintenance, and for the providing sufficient and proper clothing for such child till of age as aforesaid, and also for the reasonable schooling and education of such child, *then the court shall not proceed to bind out such child as aforesaid.*" By the act of 1798, ch. 101, sub-ch. 15, sec. 20, it is declared, that the orphans court shall not under pretext of incidental power or constructive authority, exercise any jurisdiction whatever, not expressly given by this act or some other law. The court in this case, by binding out the child exceeded its powers. The tender of a sufficient bond, under the act of 1793, deprived the court of jurisdiction. The *character* of the appellant does not alter the question, or enlarge the powers of the court. Though a court of chancery in this State has power to deprive an improper person, even a parent, of the custody of an infant and commit it to proper custody, yet the orphans courts have no such authority. Theirs is a special jurisdiction, limited by the express grant of the laws creating them, and conferring jurisdiction. For these reasons it is insisted, that the order appealed from should be reversed.

*Benjamin C. Presstman* for the appellee.

I think that under the decision of this court, in the case of *Lammott vs. Maulsby,* 8 *Md. Rep.,* 5, no appeal will lie to *this court* in this case. The principle there established is, "that where an inferior court exercises a special limited jurisdiction, conferred by statute, no appeal from its decisions in such cases lies to this court." The act of 1842, ch. 25, conferred upon the orphans court special limited jurisdiction, such as they did not previously possess, and by the second section an appeal is given to the *county courts,* in all cases arising under that act. By the present constitution of the State, an appeal will lie under that act, from the orphans court of Balti-

more city, to the superior court of Baltimore city, which is clothed, with the same powers as the county courts in this regard.

The sufficiency of a bond is under the terms of the act of 1793, ch. 45, clearly left to the *discretion* of the orphans court. For what reasons the court refused to accept this bond, is not set forth in the record. The taking of the bond is confided to the discretion of the court, and very properly so. It was not intended, that in the exercise of this delicate responsibility, the court should assign all the reasons which operated on their minds. I think the language of the court, in the case of *Lammott vs. Maulsby*, establishes, that the construction of the act of 1842 gives authority to the orphans court, to hear and determine *all matters of dispute* between masters and apprentices. The court in this case had entertained jurisdiction to hear and determine the petition filed, and had taken testimony on the subject, before the bond was tendered. The tender of the bond, at best, was but a *fact* for the consideration of the court, *after* jurisdiction had attached.

But what is meant by a bond for the *due* maintenance, and the *reasonable* schooling and *education* of such child, will be better understood by looking at the object of the statute, as declared in the preamble. It is "to guard against the liability of destitute children, becoming useless or depraved members of society." Something more then is required of the court, than to consider merely the pecuniary sufficiency of the obligors. I cannot believe the highest judicial authority of this State will adopt the conclusion contended for by the appellant, that it is a matter of no moment, whether the appellant who seeks to obtain possession of the child, is a woman of *bad character* or not, and that whether she keeps a house of *ill-fame*, and a place for open prostitution, will not impair her right to have the custody of this child. Such a doctrine would be a blot upon the escutcheon of the State, upon whom rests the sacred trust of guarding the morals of her children. Although I admit, that the orphans courts can exercise no implied powers, I think their action in this case, in refusing to take the bond, was justified by the manifest intention of the

framers of the act of 1793, and that the bond was, in no fair and true sense, sufficient for the *due* maintenance and *education* of the child.

TUCK, J., delivered the opinion of this court.

A minor having been brought before the orphans court, for the purpose of being apprenticed, under the act of 1793, ch. 45, the appellant, who had possession of the child, appeared and offered to give bond for her due and comfortable maintenance, in pursuance of the last proviso of the *second* section of that act. Upon taking evidence and consideration of the case, the court refused this application, and bound the child to the appellee, from which order this appeal was entered.

It is supposed, that the words of the act of Assembly make it the imperative duty of the orphans courts to place such children under the care of any person who may offer the necessary bond, and that they can exercise no judgment in the matter; and this demand, it is said, must be gratified without reference to the character of the party. To this we cannot assent. It is to be observed, that the acts of Assembly, in relation to the care and custody of infants, were passed for their benefit, and not to promote the views of those who may seek to obtain possession of their persons; and this jurisdiction has been confided to the sound discretion of the orphans courts. As was said in a case of guardianship, the orphans court may make an injudicious choice, but it is not probable that the Court of Appeals could make a better one, (*Compton vs. Compton*, 2 *Gill*, 241,) and the principle applies equally here.

The words of the act must be interpreted to mean, any person suitable for the performance of the duties imposed by the condition of the bond. The present record illustrates the correctness of this construction. It is shown that the appellant is a very improper person to take charge of a female infant. And yet, in a controversy between her and a relative of the child, competent in point of character and means, who, with the approbation of the mother, seeks to rescue her from the example of corrupt and vicious associations, we are told that the appellant, a stranger in blood, may, as matter of right,

claim that she shall remain under this contaminating influence, to be brought up, most probably, in the courses of life which the appellant appears to have followed. This surely would be to defeat the ends for which this act was passed, which were to afford necessary instruction, and to prevent such persons from becoming useless and depraved members of society, and was justly discountenanced by the court below.

*Appeal dismissed.*