(Decided 14th November, 1889.)

---

MAUD M. RAMSAY, by her next friend, ANNA D. MIF-FLIN *vs.* HANNAH G. THOMPSON, Guardian of MAUD M. RAMSAY.

*Testamentary guardian—Illegitimate child—Appeal.*

In the absence of express statutory authority, a father cannot appoint a testamentary guardian to his illegitimate child; but the Orphans' Court may properly adopt the nomination of the putative father, and appoint the person designated by him, in cases where no objection can be made to the nominee, and no superior claims are presented by other parties.

From an order of the Orphans' Court appointing the mother as guardian of her illegitimate child, in the place of a testamentary guardian designated by the putative father, no appeal will lie.

APPEALS from the Orphans' Court of Harford County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, and McSHERRY, J.

*S. A. Williams,* for the appellant.

*Thomas H. Robinson,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This case comes from the Orphans' Court for Harford County, and the record presents three several appeals from three different orders of the Court, passed on the 6th of June, 1889. The first appeal is from an order dismissing the petition of the appellant, an infant, by Anna E. Mifflin, her next friend, asking the appointment of George W. Jones and S. A. Williams as her guardians, in the place and stead of Anna E. Mifflin resigned. The second appeal is from an order of the Court refusing to direct plenary proceedings upon the application of the appellant, by her next friend; and the third is from an order appointing Hannah G. Thompson, the mother of the appellant, her guardian,—the appellant being a minor under the age of twelve years at the date of this appointment.

The appellant is an illegitimate child of the late Dr. Saml. J. Ramsay, deceased, by Hannah W. Whitelock, since married to George G. Thompson. Dr. Ramsay died in the fall of the year 1886, and by his will he devised and bequeathed a considerable estate, both real and personal, to this natural child of his, and appointed Miss Anna E. Mifflin the sole executrix of his will, and guardian of his natural child, Maud M. Ramsay, until the latter should arrive to the age of eighteen years; and, expressing a fear that Miss Mifflin might die before his child should attain the age designated, he requested that, as soon as Miss Mifflin should assume guardianship, she would immediately name a successor to herself, in the event of death, with the approval of the Orphans' Court. Sometime after the probate of the will, Miss Mifflin was appointed guardian to the child, and she gave bond with sureties. Subsequently the sureties in the bond made application for counter-security, and the guardian was, by order of Court required to furnish such counter-security; but, instead of

Ramsay *vs.* Thompson.

furnishing the counter-security, she resigned the guardianship, and requested that her appointment should be revoked.    At the same time she nominated and recommended for appointment, as her successors in the office, Geo. W. Jones and S. A. Williams.    The resignation was accepted by the Court, and a citation ordered to issue for the mother of the child to appear.    After the return of the citation, the appellant, by her next friend, Miss Mifflin, filed a petition, stating the facts just recited, and prayed the appointment of Jones and Williams, the nominees of Miss Mifflin, in the place and stead of the guardian resigned.    This petition was dismissed, with costs.    Thereupon, the appellant, by her next friend, made application to the Court to direct a plenary proceeding in the matter; but that application was denied.    And the Court then, by its order, appointed the mother of the child its guardian, and accepted and approved her bond as such.    It is from these orders that the several appeals have been taken.

Upon this state of facts, it is very clear, that, unless the nomination of Jones and Williams by Miss Mifflin was binding and conclusive upon the Orphans' Court, and deprived that tribunal of the right to exercise its judgment and discretion in the selection and appointment of a guardian for the infant, these appeals cannot be entertained by this Court.

It is a well settled principle in the law of domestic relations, in this country at least, that as between the mother and the putative father of a natural child, the mother is the natural guardian, and has the right to the care and control of the child, during the age of minority, unless it be otherwise expressly provided by statute. *Wright vs. Wright*, 2 *Mass.*, 109; *Somerset vs. Dighton*, 12 *Mass.*, 387; *Petersham vs. Dana*, 12 *Mass.*, 433; *People vs. Kling*, 6 *Barb.*, 366; *Reeve's Domestic Rel.*, 315. And therefore, as the appointment of a testamentary

guardian under the Statute of 12 Charles II, supersedes the claims and control of any and all other guardians, and extends to the person and estate of the child, and places the person appointed *in loco parentis*, it follows that the father of a natural child, in the absence of express statutory authority, cannot appoint a testamentary guardian for such child; and such has been the uniform decision of the Courts ever since the Statute of Charles II was passed. It is held that the terms of the statute, conferring power upon the father to appoint guardians, do not confer power to appoint guardians to his illegitimate children. *Ward vs. St. Paul*, 2 *Bro. Ch. Cas.*, 583; *Peckham vs. Peckham*, 2 *Cox*, 46; *Barry vs. Barry*, 1 *Moll.*, 210; *Alex. Brit. Sts.*, 468-471; *Reeve's Dom. Rel.*, 315; 2 *Kent Comm.*, 224. And as the father has no such power of appointment for his natural children, it follows necessarily that he could not delegate power to a third person to make such appointment.

It is true, it has been the practice of the Court of Chancery to adopt the nomination of a guardian made by a putative father for his natural child, in cases where he has left it an estate, and the person nominated is in all respects proper. But this is simply in deference to the wishes of the deceased, and not as matter of right which the Court is bound to respect. *Ward vs. St. Paul*, *supra; Peckham vs. Peckham, supra; Chatteris vs. Young*, 1 *Jac. & Walk.*, 106. And so it would be very proper, in cases where no objection can be made to the nominee, and no superior claims are presented by other parties, for the Orphans' Court to adopt the nomination of the putative father, and appoint the person designated by him ; but this is a matter entirely within the discretion of the Orphans' Court. And being so in the discretion of the Court, it could not, in this case, be required to direct a plenary proceeding, as there were no facts in contest, and nothing to be determined by such proceed-

ing that would in any way bind or conclude the action and discretion of the Court. *Cain vs. Warford,* 3 *Md.,* 454.

The mother, being the natural guardian of the child, was deemed by the Court to be a fit and proper person to act, and was therefore appointed guardian (Code, Art. 93, sec. 146); and it has long since been settled, that from an order making such appointment no appeal will lie to this Court. *Compton vs. Compton,* 2 *Gill,* 241; *Johnson vs. Brannaman,* 10 *Md.,* 495. These appeals must all be dismissed.

*Appeals dismissed,*
*with costs.*