HARRISON W. VICKERS, SURVIVING EXECUTOR.
*v.* LINDA M. STARCHER.
[No. 69, October Term, 1938.]

524

*Decided December 1st, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Stephen R. Collins,* with whom was *Herbert E. Perkins* on the brief, for the appellant.

JOHNSON, J., delivered the opinion of the Court.

The appeal in this case, by Harrison W. Vickers, surviving executor under the last will and testament of Ellsworth C. Bowers, late of Kent County, Maryland, deceased, is from an order of the Orphans' Court of that county denying his petition to have transmitted certain issues to the Circuit Court for that county for trial.

The record discloses that subsequent to the probate of the will, letters testamentary were granted Harrison W. Vickers and W. Bradford Cropper, executors named therein. On April 15, 1937, subsequent to Cropper's death, a first administration account was filed by the surviving executor and passed by the court. Vickers, the surviving executor, having procured the rescission of the first account and obtained leave to file a new one, on March 1st, 1938, filed what purports to be a "Corrected First Administration Account," by the terms of which he charged himself with the amount of inventories of real estate and personal property as per appraisals, totaling $13,020.29, after making deductions for certain personalty included therein, appraised at $540, claimed by a sister of the testator, and deductions of $1,094.54, representing money held under certificates of participation in the Third National Bank of Chestertown, Maryland. There were also certain losses claimed, being the difference between the appraisals of certain parcels of real estate and the amounts for which they sold, totalling $1,531.10, further reducing the amount with which the surviving executor was charged to $11,489.19. However, this latter sum was increased by a gain of $797.79 from sale of the lumber yard and other properties above their appraised values to $12,286.98. The executor also charged himself with certain other items which, according to the account, were collected by himself and his co-executor from August 1st, 1933, to August 20th, 1936, amounting to $13,880.34, which amount was made up of several miscellaneous collections, the largest of which were on account of two life insurance checks, each in the sum of $1,011.22, the remainder consisting of collections for rents, open accounts, notes and mortgages due the estate. The surviving executor likewise charged himself with certain miscellaneous collections made by him subsequent to the death of Cropper, amounting in the aggregate to $3,041.29, which sum included a $1,900 bequest from Rachael A. Parrott's estate, and bank dividends, payments on open accounts and upon certificates of participa-

tion due the estate. These, added to the other sums with which he had therein charged himself, increased the total amount to $29,208.61.

In the "Corrected First Administration Account," the executor prayed allowances for payments and disbursements, totalling $14,000.40. These allowances were the usual items found in such accounts, such as payment for nursing, auctioneer fees, premium on bond, advertising, funeral expenses, appraisers, medical services, tomb, fees due the register of wills and payments for claims filed against the estate. After their allowance a balance of $15,208.21 was left for distribution.

A better understanding of the questions presented for decision will be gained by reference to certain items contained in the "Corrected First Administration Account." Of the sums therein, reported as having been collected by Vickers and Cropper, appear one for $750 and another for $230, representing collections made by R. W. Stavely on "open accounts and notes," while of those which, according to the account, were collected by the surviving executor, are the following: An item of $34.38 received July 8th, 1937, on "E. C. Bower's Director's Note"; another item of $15.63 collected January 4th, 1937, on "Director's Note" paid by the estate, and another of December 18th, 1936, on a Director's Note paid by the estate for $297.15.

And included among the disbursements, for which allowances were prayed, are: (1) Note and interest of Linda M. Starcher, as per claim filed $498.60; (2) note and interest of Linda M. Starcher, as per claim filed $55.28; (3) note and interest of Carl LeCates, as per claim $145.73; (4) note and interest of Harry A. Smith, as per claim $55.36; (5) note and interest of Walter Francis, as per claim $118.50; (6) an amount of $285 paid William P. Constable and H. W. Vickers as a fee for representing the testator's estate in caveat proceedings pertaining to Rachael A. Parrott's estate; and (7) an item to the First National Bank for director's note of the testator, amounting to $4,884.72.

To the Corrected First Administration Account, exceptions were filed by Linda M. Starcher. For the most part, these related to the allowance of the items previously mentioned, and disputed their correctness. So far as the exceptions related to the amounts with which the surviving executor was charged, the objections were based on the ground that such items were indefinite, while, with regard to the allowances claimed, it was asserted, with reference to one class, that the executors should have paid certain obligations at an earlier date from funds within their hands and stopped interest thereon; that one of the obligations against the estate for which an allowance was asked should not have been paid for the reason that one of the makers was a legatee under the will.

It was also objected that the allowance of $285 paid as a counsel fee for representing the estate in the caveat proceedings concerning the Parrott estate was improper, also that payment of an item for which an allowance was prayed of $4,884.72 in settlement of a director's note given by testator to the First National Bank was improper because barred by the statute of limitations and upon other grounds. Allowances totalling $15 for sums paid Enna B. Lewis in stating the account were objected to, as was the allowance of $100 claimed by the executor as a loss on certain real estate appraised at $500, but by the corrected account shown to have been sold for only $400. It was also objected that the estate had received no interest upon the money on deposit in bank to the credit of the surviving executor, contrary to the understanding of the exceptant to the effect that such interest would be received.

The exceptions were promptly answered by the surviving executor, and if the answer could be sustained by proof, the exceptions would be without merit. After answering, the surviving executor filed a petition under oath, in which the exceptions and answers were referred to, alleging that said exceptions and answers thereto raised certain disputed issues of fact. The petition con-

cluded with a prayer for plenary proceedings under sections 263 and 264 of the Code, Article 93, and asked that such issues be framed and approved by the court and sent to the Circuit Court for Kent County for trial. In the meantime the Orphans' Court had decided to hold a hearing upon the exceptions and notified the surviving executor, as well as the cashier of the First National Bank and a Mr. Brooks, to appear June 28th, 1938, and produce all vouchers, checks, paper-writings and bank records pertaining to the estate. Oral discussion was had with the court, who were urged to render a decision on the petition for plenary proceedings, but it was suggested that, since no issues had been framed and submitted for their consideration, they were not obliged at that time to render a decision upon the petition. However, the court extended the time to July 12th within which petitioner's counsel could prepare and file the form of issues asked for.

On June 28th, the surviving executor was called and made written reply to the effect that he had been blind for almost two years and was compelled to rely on his secretary to keep all papers and accounts pertaining to the estate, and the same were voluminous; that without her assistance he could only rely on his memory, and the secretary was then ill and had gone away for an indefinite period. The bank cashier testified as to the balance of funds in the bank to the credit of the estate.

On the same date, the executor submitted nine issues to be certified to the Circuit Court for trial. The first of these related to the sums of money received by the estate from W. R. Stavely, representing collections made on open accounts, and questioned whether such items were to be declared by the court insufficient for not showing in detail the names of the debtors to the estate, etc. The second dealt with three items mentioned in the administration account from collections on testator's director's note, and sought an answer to the inquiry as to whether the items were properly claimed. The third related to several items of interest paid on the testator's obligations,

and asked whether the executors were negligent in not paying the notes and stopping interest by a certain date, because having sufficient cash to discharge their payment. The fourth was whether the executors were negligent in payment of the Walter Francis note and interest, while the fifth sought an answer as to whether they were negligent in paying Constable and Vickers a fee of $285 for representing the Bowers estate in the Parrott estate, and the sixth related to the existence of negligence on their part in payment of the director's note of the decedent to the First National Bank. The seventh was whether they could properly be allowed credit for the two amounts of $15 paid Enna B. Lewis for stating the account, and the eighth related to the $100 claimed as loss on account of the sale to Joiner of the property at Lynch for $400, said property having been appraised at $500. The inquiry there sought was whether the alleged loss was incorrect. The last exception submitted the inquiry as to whether exceptant was advised that money deposited to the credit of the executors would bear interest, and whether under all the circumstances they were negligent in not keeping the money in bank to the credit of the estate in an interest bearing account. On July 19th the Orphans' Court denied these issues.

Briefly stated, appellant takes the position that since the exceptions were answered under oath the proceedings became plenary; that the controversies raised are proper subjects for issues, that the issues as framed properly present the questions in controversy, their form being sufficiently clear to justify their submission to a court of law for trial by a jury.

The exceptions may be treated as a petition, and since they were answered by the surviving executor under oath, it follows that the proceedings thereby became plenary. *Bagby, Md. Law of Excrs. & Admrs.*, pages 277 and 280, and cases there cited; *Kerby v. Peters*, 172 Md. 1, 190 A. 511; *Flaks v. Flaks*, 173 Md. 358, 196 A. 116.

But although the proceedings were plenary, issues, to be submitted, must present clearly the point involved and

be so framed as to enable the jury to give a single answer to the entire question. And since the orphans' court is compelled to give effect to the answers, the latter must relate to a matter which the court has jurisdiction to decide and whose decision is not wholly within the court's discretion. *Bagby, Md. Law of Excrs. & Admrs., supra,* page 292; *Goldsborough v. De Witt,* 169 Md. 463, 182 A. 324; *Fowler v. Brady,* 110 Md. 204, 209, 73 A. 15; *Struth v. Decker,* 102 Md. 496, 500, 62 A. 709; *Ramsay v. Thompson,* 71 Md. 315, 18 A. 592.

Moreover, it should be borne in mind that issues which submit questions of law to a jury are improper. *Dronenburg v. Harris,* 108 Md. 597, 71 A. 81; *Goldsborough v. De Witt, supra; Bagby, Md. Law of Excrs. & Admrs., supra,* page 280.

Keeping before us the rules heretofore stated, we will consider the proposed issues. The first of these seeks to have the jury answer whether the items of $750 and $230 are to be declared insufficient, while the second would require them to answer whether the three items with which the surviving executor charged himself, representing collections on the Bowers director's note, are proper as claimed in the account. It is manifest that both of these submit questions of law, and could not, therefore, have been granted. In addition, the first relates to two separate and distinct items, while the second pertains to three of such items. They are, therefore, apart from submitting questions of law, bad as to form, in that they require a jury to deal by a single answer with more than one matter.

Issues three to six, inclusive, would require a determination by the jury, in answering them, as to whether the surviving executor was guilty of negligence in paying interest upon certain claims, in paying the Francis note, counsel fees, and the note due by the estate to the First National Bank. The first issue relates to five separate and distinct obligations, and what was said in that regard concerning the first and second issues is equally applicable here, but, apart from that, we think all these issues are

improper in failing to require information upon which the Orphans' Court could act intelligently. For instance, what is meant by "negligence"? It is a relative term and usually signifies the doing or failing to do what a reasonably prudent man under similar circumstances would have done. In this case, the Orphans' Court would be entirely unable to take intelligent action upon such of these issues as were answered affirmatively. And it must be borne in mind that, in cases of this character, the court is not concerned with negligence in the abstract, since negligence in that sense may exist without any loss to an estate. For these reasons, it must be held that the issues under consideration were properly denied.

What was said concerning issues one and two applies equally to the seventh issue, which attempted to have the jury say whether the executor could "properly be allowed" credit for two items totalling $15 paid Enna B. Lewis for stating the account, for manifestly by granting that issue a question of law only would have been submitted to the jury.

The eighth issue attempts to have the jury say whether the item of $100 claimed by the surviving executor as a loss on real estate located at Lynch, Maryland, is correct. This property was appraised at $500 and sold by the executors to Joiner. It may be assumed, from the sketchy record before us, that the executors reported the sale, and that the sale was ratified by the Orphans' Court before a deed for the property was executed. That being true, they are bound to account in the settlement of the estate in accordance with the report of sale, and it cannot be set aside or amended by the method here proposed. If a mistake was made by them in their report, that matter may be corrected, not by a jury, but by application and a proper showing to the Orphans' Court.

The ninth and final issue proposed would have required the jury to answer (1) whether Linda M. Starcher was ever advised that the money deposited to the credit of the executors would bear interest, and (2) whether the executors "under all the circumstances" were negligent in not

keeping the money in bank to the credit of the estate in an interest bearing account. The issue is highly objectionable as to form, since the answer to the first of those inquiries might not have been the answer to the second. Moreover, the understanding of exceptant that interest would be received upon the bank balance to the credit of the estate could in no way bind the executors, there being no showing that either they or the bank were responsible for such an understanding. Certainly the right of an estate to receive interest is not determinable by any such considerations, and the second inquiry, apart from the fact that it was connected with the first, is improper to submit to a jury who, even if the issue were single, could only say that the executors were negligent for, as observed with reference to issues three to six, that term was, for the purpose of issues, entirely too general and indefinite.

While there is no showing that Linda M. Starcher had any such interest in the estate as to entitle her to file exceptions to any items appearing in the Corrected First Administration Account, we have considered the questions presented upon their merits, assuming for that purpose that she was in fact interested in the ultimate distribution of the estate under the will.

Since, for the reasons assigned, all the issues submitted by appellant were improper, the order of the Orphans' Court of Kent County denying them was correct, and must be affirmed.

*Order affirmed, with costs.*