872 F.2d 419
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Brian TUCKER, Plaintiff-Appellant,
v.
KFC NATIONAL MANAGEMENT COMPANY, Defendant-Appellee.
 No. 88-3581.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 12, 1989.
Decided March 15, 1989.
 
 Brice Gordon Dowell for appellant.
 Daniel J. Moore (Thomas M. Trezise, Lori L. Blair, Semmes, Bowen & Semmes on brief) for appellee.
 Before K.K. HALL, PHILLIPS, and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Brian Tucker appeals from the district court's grant of summary judgment to KFC Management Company ("KFC"). The lower court ruled that KFC had no duty, under Maryland law, to protect Tucker from the criminal conduct of one of its customers or, even if such a duty existed, that the alleged breach was not the proximate cause of Tucker's injuries. Finding no error, we affirm.
 
 I.
 
 2
 At approximately 2:00 a.m. on November 29, 1984, Tucker and a friend entered a Kentucky Fried Chicken restaurant in downtown Baltimore. While standing at the service counter, Tucker placed his wallet on the counter and turned for a moment to speak to his friend; when he turned back, his wallet was gone. Tucker approached three strangers in the restaurant and asked whether any one of them had his wallet. One of the strangers, Reeve, asked to whom Tucker was speaking, and Tucker responded that he was speaking to whoever had his wallet. At this point, Reeve began screaming and acting in a threatening manner. Tucker approached Reeve and stated that he wanted only his wallet but did not want any problems. As Reeve also approached, he removed his coat and threw it to the ground; Tucker did likewise. Reeve, still screaming, pushed Tucker and Tucker grabbed him and pulled him toward the store window. Reeve then drew a knife and repeatedly stabbed Tucker. Tucker sustained severe injuries, including permanent brain damage. The entire confrontation lasted only a few minutes.
 
 
 3
 Deponents testified that the store was located in one of Baltimore's worst crime areas and that violence had been a common occurrence at the store. The store building's prior occupant, a pizzeria, had employed a security guard through August, 1982, when the building was sold to KFC. KFC retained the security guard to protect the vacant building until the conversion of the store was completed. The fried chicken franchise opened for business in June, 1982.
 
 
 4
 The evidence also showed that KFC has used security guards at other outlets. In the store in question, the only security measures in place at the time of the assault were a "robbery button" linked to the local police station and a bullet-resistant glass panel between the customers and employees. There was no allegation that Reeve was known to any of KFC's employees.
 
 
 5
 Tucker initially filed his complaint in the state court and it was removed to the federal district court on the basis of diversity jurisdiction. KFC moved for summary judgment and, by order entered on July 8, 1988, this motion was granted. Tucker appeals from this order.
 
 II.
 
 6
 Tucker contends that the lower court erred with regard to each of the alternative bases for its order granting summary judgment to KFC. Specifically, Tucker argues that the lower court erred in holding that KFC had no duty, under the facts of this case, to provide security for its customers and also that it erred in holding that, as a matter of law, the absence of adequate security measures was not the proximate cause of Tucker's injuries. We will address these contentions separately.
 
 
 7
 The plaintiff argues strenuously that Maryland law imposes a duty on KFC, as shopkeeper, to protect its customers, as invitees, from the criminal conduct of third parties. Our examination of state law reveals no such duty, and we decline to extend state law to create such a duty.
 
 
 8
 Tucker first contends that a duty to protect arises from a "special relationship" between a shopkeeper and its patrons. The parties agree that, absent a statute or a special relationship, a shopkeeper (or any other private person) is under no special duty to protect another from criminal acts of a third party. Furr v. Springfield State Hospital, 53 Md.App. 474, 482, 454 A.2d 414, 418 (1983). The common law rule adopted in Furr is that set forth in Restatement (Second) of Torts Sec. 315 (1965):
 
 
 9
 There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
 
 
 10
 (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
 
 
 11
 (b) a special relation exists between the actor and the other which gives to the other a right to protection.
 
 
 12
 See also Brown v. Baltimore and Ohio R. Co., 805 F.2d 1133, 1138 (4th Cir.1986). Despite the Restatement's denomination of four categories of relationships which are commonly subject to the duty to protect,[1] Maryland has consistently refused to denominate any special relationships beyond that of common carrier and passenger. Scott v. Watson, 278 Md. 160, 166, 359 A.2d 548, 552 (1976). We therefore decline to add shopkeeper/patron as a "special relationship."
 
 
 13
 Tucker's second argument, which focuses on the foreseeability of harm as a source of KFC's duty, is also not well taken. Foreseeability of harm, in and of itself, does not impose a duty, although it may be a factor in the creation of a duty. Ashburn v. Anne Arundel County, 306 Md. 617, 628, 510 A.2d 1078, 1083 (1986). Only where a "special relationship" exists does the duty to protect from a third party arise and, as we have seen, no such relationship exists here. In Nigido v. First Nat'l Bank of Baltimore, 264 Md. 702, 288 A.2d 127 (1972), the Maryland court refused to impose a duty, on the basis of foreseeability alone, on a bank whose customer was injured during a robbery. Similarly, we decline to do so here.
 
 
 14
 In refusing to find the duty urged upon us by the appellant, we are not unmindful of the policy considerations implicit in our decision. We are not prepared to say that placement of a security guard in the KFC outlet (and, by extension, in every retail outlet in every high crime area of the state) is a duty imposed by the law of Maryland. Such a drastic extension of accepted concepts of duty should await a clear declaration from the state courts or the legislature. While it is not necessary to our decision, we note that a number of other jurisdictions have held imposition of such a duty to be against public policy. E.g., Williams v. Cunningham Drug Stores, Inc., 429 Mich. 495, 418 N.W.2d 381 (1988).
 
 III.
 
 15
 The lower court also rested its decision on the alternative ground that, even assuming a duty and a breach by KFC, the injuries sustained by Tucker were not proximately caused by KFC's breach. More specifically, the court found no legally sufficient evidence to show that the presence of a security guard would have prevented the assault upon Tucker or somehow lessened the resulting injuries. In the context of third-party criminal activity, liability results only from a breach which enhanced the likelihood of the particular criminal activity which occurred. Scott, 278 Md. at 173, 359 A.2d at 555. To find, as Tucker urges, that lack of a security guard enhanced the likelihood of the spontaneous altercation requires speculation to a degree that a jury should not be permitted to undertake. We find no error in the district court's determination that no genuine issue of fact regarding proximate cause existed.
 
 
 16
 Accordingly, the judgment of the district court is affirmed.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Restatement (Second) of Torts Sec. 314A (1965) establishes four relationships which require an actor to control the conduct of third persons for the protection of others: common carrier/passenger; innkeeper/guest; possessor of land who holds it open to public/members of public who enter in response to the invitation; and one who is required by law or who voluntarily takes custody of another so as to deprive the other of his normal opportunities for protection/one in custody. Brown, supra, at 1138 n. 1