UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

BENJAMIN FENNINGER; ALESIA
FENNINGER,
Plaintiffs-Appellants,

v.

No. 98-2526

HARRIS CRAB HOUSE, INCORPORATED,
d/b/a Harris Seafood; SHIP'S STORE,
INCORPORATED, d/b/a Red Eye's
Dock Bar,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-97-3894-AMD)

Argued: March 2, 2000

Decided: March 20, 2000

Before MOTZ and KING, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

COUNSEL

ARGUED: William Davidson Evans, Jr., Washington, D.C., for
Appellants. Kristine Ann Crosswhite, CROSSWHITE, MCKENNA

& LIMBRICK, L.L.P., Baltimore, Maryland, for Appellee Ship's Store; Michael C. Rosendorf, LAW OFFICES OF TIMOTHY P. MCGOUGH, Baltimore, Maryland, for Appellee Harris Crab House. **ON BRIEF:** Warren K. Rich, RICH & HENDERSON, Annapolis, Maryland, for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Benjamin and Alesia Fenninger, Pennsylvania residents, brought this action against David Scott Watts, a Maryland resident, and two Maryland corporations, Harris Crab House, Inc. and Ship's Store, Inc., d/b/a Red Eye's Dock Bar. After the district court dismissed the claim against Watts for lack of service, it granted summary judgment to Harris and Red Eye's. The Fenningers appeal. Finding no error, we affirm.

I.

This is a premises liability action. Although some of the facts are in dispute, we resolve any such disputes in favor of the Fenningers as non-movants. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Nguyen v. CNA Corp. , 44 F.3d 234, 237 (4th Cir. 1995).

Harris and Red Eye's are restaurant-bar establishments located at Kent Narrows, Maryland, in a marina on navigable waters. Each restaurant owns the wharf/pier area directly outside of its respective establishment. Harris owns the docking area used by patrons to access both establishments on which the altercation that gave rise to this lawsuit took place.

2

On August 20, 1995, the Fenningers docked their pleasure boat at the Harris docking area and dined at Harris. Watts also moored his pleasure boat in the docking area and entered Red Eye's. Although the evidence is in some dispute, the Fenningers assert "upon information and belief" that Red Eye's failed to obtain proper identification from Watts before serving him alcoholic beverages. Watts allegedly left Red Eye's in an intoxicated state and subsequently became involved in an altercation with Benjamin Fenninger, who had returned from dinner and was sitting in the Fenningers' docked boat. In the course of the altercation, Watts jumped from the pier onto the Fenningers' boat and assaulted Benjamin Fenninger. On February 13, 1996, Watts entered an Alford plea to a charge of battery in the Circuit Court for Queen Anne's County.

On November 14, 1997, the Fenningers filed this action. Attempting to invoke the district court's diversity and maritime jurisdiction, the Fenningers alleged that Harris and Red Eye's owed them a duty of reasonable care. After the Fenningers failed to conduct discovery or to respond to discovery requests in violation of the scheduling order, the district court granted the Harris and Red Eye's motions for summary judgment, finding that the Fenningers had failed to present any evidence from which a jury could reasonably find that Benjamin Fenninger's injuries were proximately caused by the acts or omissions of the corporate defendants, in violation of an applicable standard of care. The Fenningers then moved under Fed. R. Civ. P. 59(e) for reconsideration, or alternatively, for a stay in order to take discovery. The district court denied that motion, finding that the Fenningers had not provided a sufficient explanation for their failure to complete discovery in a timely fashion in accordance with the scheduling order. The Fenningers appeal.

II.

Under Maryland law, a duty to protect a private person from the conduct of a third person arises only when a "special relationship" exists, such as that between a common carrier and passenger. See Valentine v. On Target, Inc., 353 Md. 544, 552-53, 727 A.2d 947, 950-51 (1999). A business owner and patron do not have a "special relationship." See Tucker v. KFC Nat'l Management Co., 689 F. Supp. 560, 562 (D. Md. 1988), aff'd per curiam , 872 F.2d 419 (table),

3

1989 WL 27484 (4th Cir. March 15, 1989). Rather, a business owner only owes its invitees a duty to maintain its premises in a reasonably safe condition; a business owner is not an insurer of the safety of its invitees. See id. (citing Lloyd v. Bowles, 260 Md. 568, 572, 273 A.2d 193, 195-96 (1971)).

The Fenningers maintain that Harris had a common law duty to patrol, monitor, and protect its patrons, as invitees, from the criminal conduct of third parties by providing adequate security services on its premises. They urge us to reverse the district court's conclusion that no evidence suggested that the corporate defendants failed to exercise reasonable care based on (1) Benjamin Fenninger's declaration that Red Eye's is an "unruly" bar, that patrons from Red Eye's often enter onto the Harris pier and docking area, and that Harris is aware of the risk to its patrons and failed to secure its pier and docking area, and (2) the Fenningers' late-filed evidence of general crime patterns in the area.

Reasonable measures do not necessarily require a business owner to provide security service for its invitees even if there is evidence of criminal history on its premises. See id. at 563 (Maryland law imposes no duty on an owner of a small fast food retail store in high crime area to provide security service for its invitees); Nigido v. First Nat'l Bank, 264 Md. 702, 705-06, 288 A.2d 127, 128-29 (1972) (dictum) (bank's duty of reasonable care may not require it to provide security protection despite a history of bank robberies). Furthermore, a business owner is not required to take precautions against a sudden attack from a third person that it has no reason to anticipate, nor is it required to take any actions until it knows or has reason to know that a business invitee is endangered. Restatement (Second) of Torts § 314A cmts. e & f (1965).

The standard of reasonable care does not require Harris to provide security services on its pier and docking area. Even considering all of the Fenningers' evidence, there is no record evidence of a history of heightened criminal activity on Harris's premises. Rather, the only evidence the Fenningers submitted regarding a pattern of criminal activity on Harris's premises prior to the altercation is Benjamin Fenninger's declaration, which vaguely maintains that Red Eye's' "rowdy" customers, "many of whom are intoxicated, travel across the

4

Harris [pier and docking area]." Assuming that this statement is true, the Fenningers' late-filed criminal activity evidence--five incidents occurred on Harris premises during a 3 year period <u>after</u> the altercation--hardly suggests a duty, much less a need, to provide security services. Nor does the evidence suggest that Harris should have anticipated this specific altercation, as both Watts and the Fenningers had frequented these establishments prior to the altercation without incident.

As for the liability of Red Eye's, the Fenningers did not patronize Red Eye's and the altercation occurred on the Harris docking area. Thus the Fenningers were not invitees or licensees of Red Eye's. Nonetheless, the Fenningers maintain that Red Eye's is liable to them on two theories.

First, the Fenningers contend that Red Eye's was aware of its long history of assaults and disorderly conduct on and near its premises, and thus it had a duty to control its intoxicated invitees, so as to prevent them from causing intentional injury to persons on adjoining premises. The Fenningers fail to cite any statute or case that requires business owners to provide security services for the protection of non-patrons. They rely instead on cases that hold a landowner has a duty to exercise reasonable care to prevent injury to persons on adjoining premises. <u>See e.g.</u>, <u>Toy v. Atlantic Gulf & Pacific Co.</u>, 176 Md. 197, 4 A.2d 757 (1940) (deposits in water); <u>Frenkil v. Johnson</u>, 175 Md. 529, 3 A.2d 479 (1939) (explosion). These cases, however, involve migration of contaminants onto adjoining land or excavation and blasting activities and are inapposite here.

Second, the Fenningers urge us to apply a "but for" test. That is, "but for" Red Eye's allowing Watts to become intoxicated, leave the bar, and enter onto the Harris docking area, the altercation would not have occurred. The "but for" test, however, is inapplicable here. Although a number of states have Dram Shop Acts authorizing civil damage actions against tavern owners for the tortious acts of their intoxicated patrons, Maryland remains aligned with the minority of states that prohibit such actions. Maryland courts have consistently held that "the law recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor." <u>Felder v. Butler</u>, 292 Md. 174, 177, 438 A.2d 494, 496

5

(1981) (internal quotation marks and citation omitted). Since Maryland law imposes no liability on tavern owners for negligent acts of their patrons, it can hardly be interpreted to impose such liability for their intentional acts, as the Fenningers urge us to do here.

In sum, the district court did not err in granting Harris and Red Eye's summary judgment on the Fenningers' state law claim.* Nor did the court err in denying the Rule 59 motion. The denial of such motions is reviewed for abuse of discretion. See Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 402 (4th Cir. 1998). There was no abuse here. The Fenningers' late submission--the criminal activity information--does not qualify as new evidence appropriately introduced in a Rule 59(e) motion because this evidence could have been, but was not, presented in opposition to summary judgment. See Small v. Hunt, 98 F.3d 789, 798 (4th Cir. 1996) (requiring a party seeking to present new evidence in a Rule 59(e) motion to "produce a legitimate justification for not presenting the evidence during the earlier proceeding" (internal quotation marks and citation omitted)). Moreover, as noted within, this late-filed evidence details criminal activity after the altercation, not before it, and so is irrelevant.

III.

For all of these reasons, the judgment of the district court is

AFFIRMED.

_____

*On appeal, the Fenningers also insist that the district court erred in failing to recognize that they have stated a viable maritime claim. The Fenningers do allege in their complaint "admiralty and maritime jurisdiction" as well as diversity jurisdiction. But the factual allegations in the complaint fail to state a viable maritime claim, and the Fenningers have not cited any authority that establishes a duty under maritime law that was conceivably breached in this case. Thus we see no error in the district court's treatment of their asserted maritime claim.